# IN THE UNITED STATES BANKRUPTCY COURT

# FOR THE DISTRICT OF IDAHO

---

**In Re:**

LANDSING DEVELOPMENT
GROUP LLC,

**Debtor.**

**Bankruptcy Case
No. 04-03424**

---

## MEMORANDUM OF DECISION

---

**Appearances:**

> Jeffrey A. Strother, Boise, Idaho, Attorney for Debtor**.**
>
> David B. Young, BELNAP & CURTIS, Boise, Idaho, Attorney for Dennis O"Keefe

Mr. Dennis O'Keefe, a real estate broker employed by Chapter 11 debtor in possession Landsing Development Group, LLC ("Landsing"), applied for Court approval of professional compensation as an administrative expense in this case. Docket No. 215; *see* 11 U.S.C. § 503(b)(2). Landsing objected, arguing that O'Keefe is not entitled to any compensation. Docket No. 235. The Court conducted an evidentiary hearing concerning O'Keefe's application and

MEMORANDUM OF DECISION - 1

Landsing's objection on July 6 and 7, 2005. The Court concludes O'Keefe's request for compensation must be denied. This Memorandum of Decision constitutes the Court's findings of fact and conclusions of law. Fed. R. Bankr. P. 7052; 9014.

## FACTS[1]

Bruce Hessing is Landsing's sole owner and its managing member. Landsing's primary asset was approximately forty acres of bare ground that it intended to develop into residential housing. This development project was known as "Southfork." Southfork was composed of several parcels in varying stages of development into individual residential lots.

Primarily due to financial problems with its secured lenders, Landsing sought the advice of a bankruptcy attorney, Randy French ("Counsel"). Landsing filed a petition under Chapter 11 of the Bankruptcy Code on September 22, 2004. Docket No. 1. In attempting to restructure, it was Landsing's goal to either obtain new financing secured by the real property to satisfy existing secured debt, sell individual lots to pay the secured debt, or sell the partially completed project as a whole to raise the money it needed and protect the owner's equity.

---

[1] In finding the facts, the Court has relied in part upon its opportunity to observe the witnesses testify and to assess their demeanor and credibility. The Court has assigned appropriate weight to that testimony in this Decision.

MEMORANDUM OF DECISION - 2

Dennis O'Keefe is a professional Boise real estate broker with considerable experience. Counsel approached O'Keefe about retaining him to represent Landsing in selling Southfork. Counsel, O'Keefe and Hessing all met in December 2004 to discuss hiring O'Keefe. Based on these discussions, and after conducting his own inquiry, O'Keefe decided that he was willing to work for Landsing, but not Hessing personally, on a sales commission basis. Specifically, O'Keefe offered to accept six percent of the gross sale price from the sale of Southfork. He agreed he would not receive a commission on any individual lot sales arranged by Hessing personally. O'Keefe communicated these terms to Counsel, but not to Hessing. Indeed, O'Keefe had little direct communication with Hessing, preferring to deal with Counsel as Landsing's legal representative.

Hessing, however, was not convinced about the need to hire O'Keefe at all. Ex. X. Over the course of multiple exchanges with Counsel, who felt retaining a realtor was critical to the prospects of confirming a Chapter 11 plan, Counsel convinced Hessing that O'Keefe should be retained. Exs. G, H, I, J. However, Hessing consented to O'Keefe's employment with the understanding that O'Keefe would not receive any sales commission if Hessing were successful in arranging a refinance of the existing secured debt with a new lender, or if

MEMORANDUM OF DECISION - 3

Hessing arranged a sale of the entire Southfork project to a Bruce Clibborn, a party with whom Hessing had been communicating. Ex. K.

Aware of Hessing's and O'Keefe's different views regarding O'Keefe's employment, Counsel asked O'Keefe to come to his office on January 28, 2005, to review an application by Landsing for Court approval of O'Keefe's employment that Counsel prepared (the "First Application"), and to sign an accompanying affidavit, both of which would then be filed with this Court. Docket Nos. 118, 119. O'Keefe reviewed the application, which in relevant part stated: "The terms of employment of Dennis O'Keefe, subject to the approval of the Court, are that he will undertake this representation for a commission of six percent (6%) of the gross sales price for any sale consummated." Docket No. 118. O'Keefe's affidavit contained similar language regarding his proposed commission. This application was also somewhat remarkable because it stated that Counsel (not Landsing) had determined that hiring O'Keefe was in the bankruptcy estate's best interest, and that Counsel selected O'Keefe. O'Keefe signed the affidavit, and Counsel signed the application. Counsel then filed both the application and O'Keefe's affidavit with the Court that same day, January 28.

Later that same day, Hessing went to Counsel's office where he signed yet another application (the "Second Application") for approval of

MEMORANDUM OF DECISION - 4

O'Keefe's employment on behalf of Landsing.  Docket No. 122.  This Second Application was markedly different in content than the First Application that O'Keefe had reviewed.  In addressing O'Keefe's compensation, it stated:

> The terms of employment of Dennis O'Keefe, subject to approval of the Court, are that he will undertake this representation for a commission of six percent (6%) of the gross sales price for any sale consummated, except that Mr. O'Keefe will not be paid any commission for a sale which the principals of the Debtor-in-Possession negotiate.  In the event that the Debtor-in-Possession succeeds in refinancing the current secured debt, the Debtor-in-Possession may decline any offer to sell the property.

Docket No. 122.  The Second Application also represents that Landsing (not Counsel) had determined hiring O'Keefe was in the best interests of the bankruptcy estate, and that Landsing had selected O'Keefe.  Counsel did not sign the Second Application.  Counsel then filed it with the Court on February 3, 2005.

On February 23, 2005, the Court entered an Order Approving Employment of Real Estate Broker (the "Order").  Docket No. 133.  The Order provides that based "upon the Application of counsel" and the affidavit of O'Keefe, the realtor's employment was approved pursuant to 11 U.S.C. § 327.

An intractable factual dispute developed at the hearing.  O'Keefe testified that he had never seen the Second Application, and that he understood he would be compensated according to the terms contained in the First Application.

MEMORANDUM OF DECISION - 5

Hessing, on the other hand, was unaware of the existence of the First Application, and only agreed to employ O'Keefe on behalf of Landsing under the terms stated in the Second Application. Ex. K. Counsel then testified that O'Keefe was aware at the time he signed his affidavit that Hessing would only agree to employ him under the terms set forth in the Second Application.

Around the same time that the two applications were signed and filed, O'Keefe delivered two blank form contracts to Counsel: an "Exclusive Seller Representation Agreement" and an "Intermountain Multiple Listing Service, Inc. Land Data Form." Exs. X, Y. O'Keefe testified that Counsel was asked to complete the forms and have Hessing sign them. While Counsel never offered any meaningful explanation why, Counsel did neither.

Throughout the early months of 2005, Hessing personally arranged several individual lot sales in the Southfork development. The proceeds from these sales facilitated Landsing's reorganization efforts, and all were approved by the Court after appropriate notice to interested parties and a hearing. *See, e.g.*, Order Approving Sale of Real Property, Docket No. 96 (entered Jan. 3, 2005). Neither Hessing nor O'Keefe dispute that they both contemplated Hessing might negotiate and finalize the sale of individual lots in Southfork, and that O'Keefe would not be paid any commission on such sales.

MEMORANDUM OF DECISION - 6

At some time in approximately March, 2005, O'Keefe secured an offer from a Mr. Gibson to purchase what remained of the Southfork development. In addition, as Landsing moved toward confirmation of its proposed reorganization plan, Hessing secured an offer from Bruce Clibborn to purchase Southfork.  The Clibborn offer was an integral part of Landsing's plan to reorganize, but efforts to conclude the sale were complicated by the existence of a competing reorganization plan filed by certain of Landsing's creditors. Ultimately, the Court confirmed Landsing's proposed plan, which contemplated the sale to Clibborn.  Order, Docket No. 221, entered June 10, 2005.

## ARGUMENTS OF THE PARTIES

Landsing argues O'Keefe is not entitled to commission or compensation because Southfork was sold to Clibborn, a sale Hessing personally arranged without O'Keefe's help.  Hessing insists such a sale was expressly excluded from those the parties agreed would justify a commission for O'Keefe.

Conversely, O'Keefe contends there was no such "Clibborn exception" incorporated in his compensation agreement.  More specifically, O'Keefe argues that he should be compensated, and that his compensation should be treated and paid as an administrative expense based on two theories.  First, O'Keefe points to the language in the First Application and Counsel's express

MEMORANDUM OF DECISION - 7

assurances to him that he would be paid a commission on any sale of the development. Second, O'Keefe asks for payment for his services based upon an equitable theory – quantum meruit.

## DISCUSSION

**A.   The requirements for allowance and payment of an administrative expense claim under § 503(b)(2) of the Bankruptcy Code.**

"An entity may timely file a request for payment of an administrative expense, or may tardily file such request if permitted by the court for cause." 11 U.S.C. § 503(a). After notice and a hearing, the bankruptcy court may allow an administrative expense claim for, *inter alia*, "compensation or reimbursement awarded under section 330(a) of [the Bankruptcy Code.]" 11 U.S.C. § 503(b)(2). Section 503(b)(2) is the "only part of Section 503(b) under which . . . professionals can receive compensation." *McCutchen, Doyle, Brown & Enersen v. Official Comm. of Unsecured Creditors* (*In re Weibel, Inc.*), 176 B.R. 209, 212–13 (B.A.P. 9th Cir. 1994) (noting that approval of an administrative expense claim under § 503(b)(2) requires that the professional fees be compensable under § 330). The claimant bears the burden of proving the legitimacy of an administrative expense claim. *In re Cent. Idaho Forest Prods.*, 317 B.R. 150, 155 (Bankr. D. Idaho 2004).

MEMORANDUM OF DECISION - 8

Section 330, in general terms, governs the allowance and amount of compensation a bankruptcy court may award to a professional employed by a trustee or Chapter 11 debtor in possession. Amounts awarded must be limited to "reasonable compensation for actual, necessary services rendered . . . ." 11 U.S.C. § 330(a). Section 330 incorporates both 11 U.S.C. § 327, which governs employment of professional persons, and by necessary implication, Fed. R. Bankr. P. 2014. *See, e.g., In re Fretter, Inc.*, 219 B.R. 769, 781 (Bankr. N.D. Ohio 1998) (holding that to qualify for compensation under § 330, employment under § 327 must have been properly secured).

Rule 2014 mandates that "[a]n order approving the employment of . . . professionals pursuant to § 327 . . . of the Code shall be made *only on application of the trustee or committee*."[2] Fed. R. Bankr. P. 2014 (emphasis added). This Rule also requires the application for approval of employment of any professional to state "any proposed arrangement for compensation." *Id*. So, too, this District's L.B.R. 2014.1 requires the trustee, debtor in possession, or committee to sign the application, and requires that application to detail the proposed arrangement for compensation of the professional.

---

[2] In Chapter 11 cases such as this one, references to the term "trustee" includes a debtor in possession. *See* 11 U.S.C. § 1107(a) ("a debtor in possession shall have all the rights . . . and powers . . . of a trustee serving in a case under this chapter.").

MEMORANDUM OF DECISION - 9

This rather complex set of related statutes and rules for the employment and compensation of professionals retained to represent bankruptcy estates, while perhaps somewhat Byzantine to some, serves a critical function. Compliance with this scheme allows bankruptcy courts, and the many parties interested in particular bankruptcy cases, to know the details of deals between the bankruptcy estates and trusted professionals, and to ensure that the limited assets of bankruptcy estates are expended prudently and properly. Compliance with the Code and Rules discourages bankruptcy estates from employing professionals who may have divided loyalties, from paying excessive compensation to professionals, or from employing professionals whose services are not needed, all to the disadvantage of creditors and equity security holders. One leading bankruptcy commentator explains:

> Generally, however, the stated purpose of the rule requiring prior court authorization of employment is to provide the court with a means of control over administrative expenses. One court has stated: "Control . . . is necessary to enable the court to contain the estate's expenses and avoid intervention by unnecessary participants. The purpose of the rule requiring prior court authorization of a professional's appointment is to eliminate volunteerism and thus aid the court in controlling estate administrative expenses." Prior approval also gives the court an opportunity to review any conflicts, the professional's competency and the necessity for the services to be performed.

MEMORANDUM OF DECISION - 10

3 *Collier on Bankruptcy* ¶ 327.03 (Alan N. Resnick & Henry J. Sommer eds., 15th ed. rev. 2005) (quoting *In re Haley*, 950 F.2d 588, 590 (9th Cir. 1991)).

### B.   The First Application and Counsel's oral assurances to O'Keefe do not support allowance of an administrative expense claim.

O'Keefe's primary argument in support of his request for a commission rests primarily on the language contained in the First Application for approval of his employment. But that application is obviously defective under Rule 2014 and L.B.R. 2014.1, both of which require that it be executed in this case by the debtor in possession. Instead, the First Application to employ O'Keefe was signed only by Counsel, not Hessing, Landsing's manager. Moreover, the First Application does not purport to represent that Counsel was acting for Landsing, something the Court suspects was Counsel's considered purpose in phrasing the statements in the First Application in the manner he did.[3] To the contrary, there is nothing in the record to establish that Hessing or Landsing had agreed to the compensation terms detailed for O'Keefe in the First Application.

Because it was technically and substantively defective under the applicable provisions of the Code and Rules, the First Application could not be

---

[3] The Court expresses no opinion regarding whether Counsel inappropriately encouraged O'Keefe to act to his prejudice, as is perhaps evidenced by Counsel's representations in the First Application, or whether O'Keefe should have relied upon Counsel's representations. Such is a matter between Counsel and O'Keefe.

MEMORANDUM OF DECISION - 11

approved. As a result, while the Order does not indicate such expressly, the Court's approval of O'Keefe's employment was, by legal necessity, based on the presence in the record of the Second Application.[4] The Second Application, the one signed by Hessing, excludes any commission for O'Keefe based on the sale of Southfork to Clibborn.

O'Keefe's affidavit, filed with the First Application, may contain some contradictory language regarding the terms of his compensation when compared to the Second Application. But the function of the affidavit was to alert the Court as to the professional's "connections with the debtor, creditors, any other party in interest, their respective attorneys and accountants, the United States trustee, or any person employed in the office of the United States Trustee." Fed. R. Bankr. P. 2014. In other words, the Court does not review the affidavit of a proposed professional to gain information regarding the proposed compensation. Instead, the employment application (and, ideally, an attached written fee agreement), should provide this information.

---

[4] Admittedly, the Court's order approving O'Keefe's employment does reference "the Application of counsel . . . ." But upon review, the Court concludes this language is at best ambiguous as to whether it refers to the First or Second Application. As noted above, since the First Application was flawed, as the signator, the Court declines to conclude it approved a defective application.

MEMORANDUM OF DECISION - 12

When entering the order approving O'Keefe's employment by Landsing, the Court could rely only on the recitations concerning O'Keefe's compensation contained in the Second Application. Doing so was the only manner in which the Court could fulfill its obligation to oversee Landsing's administrative expenses. *See* 3 *Collier on Bankruptcy* ¶ 327.03. And having done so, enforcing the terms of the Second Application is the only appropriate path.

Because, O'Keefe says, he was completely unfamiliar with the nuances and details of professional compensation in federal bankruptcy cases, he asks the Court to require Landsing to compensate him, notwithstanding the lack of a valid, Court-approved fee agreement. O'Keefe calls these "exceptional circumstances." But this "exceptional circumstances" argument is premised on an exception in the Idaho case law to the statutory requirement that a broker, employed by a seller of real estate to find a buyer, have a written agreement for compensation. *See* Idaho Code § 9-508; *Century 21 Quality Props., Inc. v. Chandler*, 646 P.2d 436, 438–39 (Idaho Ct. App. 1982) (describing the exceptional circumstances exception to Idaho Code § 9-508).

Without regard to whether O'Keefe's argument would be persuasive in a nonbankruptcy context, this Court looks to federal bankruptcy law, and the contents of its own file, to determine whether O'Keefe should be paid. After all,

MEMORANDUM OF DECISION - 13

O'Keefe was retained to provide services as a professional in a bankruptcy case; he should expect to comply with the long-established statutes, rules and decisional pronouncements governing the status of bankruptcy professionals in such cases. Under these circumstances, the Court declines to rely on *Chandler* as a basis to approve O'Keefe's claimed fees. Reliance on state law ignores the reality that, in a bankruptcy context, the Court's decision to approve payment to estate professionals may have a profound impact on the numerous other parties who have financial and other interests in a bankruptcy case.

Here, neither the Second Application (the one the Court actually approved), or any other written fee agreement, supports the notion that Landsing agreed to pay O'Keefe a commission if Hessing negotiated a sale to Clibborn. In short, O'Keefe has not met his burden of proving there is a proper legal or factual basis for the Court to approve his request for compensation as an administrative expense.[5]

---

[5] Under these facts, the Court need not, and does not, express an opinion regarding (1) whether the terms contained in a proper application to employ a professional are sufficient, in the absence of a separate written fee agreement, to support an award of compensation; or (2) whether an application to employ a realtor in a bankruptcy case may satisfy the state law statute requiring a written fee agreement executed by the seller and a realtor.

Additionally, while mentioned in O'Keefe's arguments, the Court also declines to invoke judicial estoppel against Landsing to sustain O'Keefe's claim. The Court is not persuaded that Landsing, the objecting party in this case, is attempting to gain an unfair advantage by arguing the Second Application is controlling after Counsel filed the First

MEMORANDUM OF DECISION - 14

### C. Quantum meruit.

"The [Bankruptcy] Code does not provide for fee awards based on state law theories such as quantum meruit." *In re Weibel, Inc*., 176 B.R. at 212. "Compensation to professionals acting on behalf of the estate must be based on provisions of the Code." *Id*.

The Court is persuaded that the Bankruptcy Appellate Panel's straightforward holding in *Weibel* should apply here. A proper application to employ O'Keefe disclosing the terms of his compensation (the Second Application) was filed in this case, and the Court entered an order approving that application. Docket Nos. 122, 133. Through his quantum meruit argument, O'Keefe asks the Court to invoke an equitable remedy to alter the terms of this approved employment application, thereby allowing him compensation when he would otherwise not be entitled to it. Even were the Court inclined to exercise its equitable powers, which it is not, those powers are not so broad as to ignore the requirements of the Code and Rules. *See Pac. Shores Dev., LLC v. At Home Corp.* (*In re At Home Corp.*), 392 F.3d 1064, 1070 (9th Cir. 2004) (noting that a

---

Application without Landsing's consent. Moreover, as discussed in this Decision, the Court did not rely on the representations of the First Application in entering its Order, another requirement for the operation of an estoppel. *See In re Pich*, 00.4 I.B.C.R. 183, 187 (Bankr. D. Idaho 2000) (discussing elements of judicial estoppel).

MEMORANDUM OF DECISION - 15

bankruptcy court's equitable powers do not amount to a roving commission to do equity, but are limited to effectuating the provisions of Title 11).

The Court concludes that the decisions relied upon by O'Keefe to support his equitable claim in his well-researched brief, Docket No. 245, are distinguishable. *See, e.g., Atkins v. Wain, Samuel & Co.* (*In re Atkins*), 69 F.3d 970 (9th Cir. 1995) (addressing retroactive approval of a professional's employment when the debtor had signed an engagement letter); *Law Offices of Ivan W. Halperin v. Occidental Fin. Group, Inc.* (*In re Occidental Fin. Group, Inc.*), 40 F.3d 1059 (9th Cir. 1994) (upholding order disgorging attorney's fees for failure to disclose conflicts and disapproving of quantum meruit generally); *Land West, Inc. v. Coldwell Banker Commercial Group* (*In re Haley*), 950 F.2d 588 (9th Cir. 1991) (denying compensation to a real estate broker whose employment was never approved by the court and who was never hired by the debtor); *Mehdipour v. Marcus & Millichap* (*In re Mehdipour*), 202 B.R. 474 (B.A.P. 9th Cir. 1996) (addressing retroactive approval of a professional's employment when the debtor had hired the professional); *First Interstate Bank of Nevada, N.A., v. CIC Inv. Corp.* (*In re CIC Inv. Corp.*), 192 B.R. 549 (B.A.P. 9th Cir. 1996) (holding that compensation can be paid to a professional who is not disinterested for services performed while employed by a debtor even though the order approving

MEMORANDUM OF DECISION - 16

employment is later reversed on appeal); *In re Michener*, 99.1 I.B.C.R. 33 (Bankr. D. Idaho 1999) (denying compensation to a real estate agent whose employment was never approved by the court and who was never hired by the debtor). In this case, O'Keefe's claim is simply contrary to the terms of his employment approved by the Court.

Even if there is room under the Code for such an approach, equity can not save his claim under these circumstances.

## CONCLUSION

O'Keefe bears the burden of showing he is entitled to compensation under the Bankruptcy Code and Rules. He has failed to do so. Consequently, O'Keefe's Application for Payment of Administrative Expense, Docket No. 215, will be denied. A separate order will be entered.

Dated: August 16, 2005

_____
Honorable Jim D. Pappas
United States Bankruptcy Judge

MEMORANDUM OF DECISION - 17